UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **TED DURBIN (#132464)** | **CIVIL ACTION** |
| **VERSUS** | |
| **BURL CAIN, WARDEN, ET AL.** | **NO. 10-0655-JJB-CN** |

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, May 9, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**TED DURBIN (#132464)**                                                    **CIVIL ACTION**

**VERSUS**

**BURL CAIN, WARDEN, ET AL.**                              **NO. 10-0655-JJB-CN**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the defendants' Motion to Dismiss, rec.doc.no. 13. This motion is opposed.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden Burl Cain, Deputy Warden Darrel Vannoy, Ass't Warden Leslie Dupont, Deputy Warden Richard Peabody, Deputy Warden Ronnie Jett, Ass't Warden Bruce Dodd, Ass't Warden Tim Delaney, Ass't Warden Kevin Benjamin, Ass't Warden Troy Poret, Ass't Warden Joseph Lamartinere, Col. Chad Darbonne, Ass't Warden Cathy Fontenot, Chaplain Robert Toney, Chaplain Brad DeLaughter, Msgt. Landry Valant, Msgt. Randy Barrios and Msgt. Turner, complaining that his constitutional rights have been violated through interference with his right to freely exercise his religious beliefs. Specifically, he complains that the defendants involuntarily transferred him from the main prison complex to Camp D at LSP in April, 2010, where he is now not allowed the same opportunities to practice his religion and to associate with other members of his religious faith.[1]

---

[1] An attempt by the United States Marshal's Office to serve defendant Msgt. Turner has proven unsuccessful because service of process has not been accepted on behalf of this defendant by the Louisiana Department of Public Safety and Corrections. Specifically, a representative of the Department has indicated that they are unable to identify this individual in the absence of a first name which, despite notice, the plaintiff has not provided. See rec.doc.no. 8. Pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, the failure of a

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a Complaint is subject to dismissal if a plaintiff fails "to state a claim upon which relief can be granted." In Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and more recently, in Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court noted that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests[.]" Bell Atl. Corp. v. Twombly, supra, quoting Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). See also Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Notwithstanding, although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or the" formulaic recitation of the elements of a cause of action" in order to provide the "grounds" of "entitle[ment] to relief." Bell Atl. Corp. v. Twombly, supra. See also Papasan v. Allain, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). The Court stated that there is no "probability requirement at the pleading stage," Bell Atl. Corp. v. Twombly, supra, but "something beyond ... mere possibility ... must be alleged." Id. The facts alleged in the Complaint "must be enough to raise a right to relief above the speculative level," or must

---

plaintiff to serve a defendant within 120 days of commencement of an action is cause for dismissal of that defendant from the proceedings. It is appropriate, therefore, that the plaintiff's claims asserted against defendant Msgt. Turner be dismissed, without prejudice, for failure of the plaintiff to timely effect service upon this defendant.

be sufficient "to state a claim for relief that is plausible on its face," Id. (abandoning the "no set of facts" language set forth in Conley v. Gibson, supra). A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, supra. Where a Complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." Id.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court "must accept as true all of the factual allegations contained in the Complaint." Erickson v. Pardus, supra. See also Bell Atl. Corp. v. Twombly, supra. Further, "[a] document filed pro se is to be liberally construed ... and a pro se Complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, supra (citations omitted).

In his Complaint, supported by statements made in his opposition to the defendants' motion,[2] the plaintiff alleges that he is the leader of the Jewish faith community at LSP and that on April 16, 2010, he was transferred from the main prison complex to Camp D at LSP by defendant Benjamin, "to specifically hinder me from practice my religion with other Jewish inmates." Thereafter, on May 19, 2010, defendant Darbonne, at the request of defendant Benjamin, further discriminated against the plaintiff by issuing the plaintiff a disciplinary report while the plaintiff was allegedly attending an approved religious callout at the main prison complex. Finally, on May 28, 2010, the plaintiff attended

---

[2] In the context of a motion to dismiss, the Court may consider the Complaint, any attachments and/or any subsequent filings by a pro se plaintiff. See Howard v. King, 707 F.2d 215 (5th Cir. 1983); McGruder v. Phelps, 608 F.2d 1023 (5th Cir. 1979).

a meeting with defendant Burl Cain and other unit wardens at LSP, where defendant Cain stated to all Jewish inmates at LSP (and also to members of the Mormon and Rastafarian faiths) that the leaders of their respective faith communities were being transferred to outcamps at LSP, and that if other inmates wished to continue to practice their respective faiths, the Warden would consent to their transfer to the respective outcamps.  Thereafter, beginning in June, 2010, prison officials began refusing to allow the plaintiff and other Jewish inmates from the LSP outcamps to attend religious gatherings in Room 216 of the main prison complex, which room had previously been explicitly set aside for the exclusive use of Jewish inmates at LSP.  As a result, whereas Jewish inmates from all over LSP had previously been allowed to meet and congregate in Room 216, they were no longer allowed to do so.  The plaintiff asserts that this is a discriminatory practice inasmuch as members of other religious faiths at LSP are routinely allowed to congregate together at the main prison complex.  In addition, on September 3, 2010, all of the religious items which had been obtained for the Jewish community at LSP and which had previously been made available in Room 216 were bundled up and sent to Camp D, thereby forcing other Jewish inmates to make a choice between staying at their current locations or moving to Camp D to practice their faith.  Finally, on September 10, 2010, the plaintiff spoke with defendant Vannoy about celebrating the Jewish holiday of Rosh Hashana, but defendant Vannoy responded that inmates would be forced to work on that Jewish holy day and that they "would not be allowed to congregate" for Jewish High Holy Days as they had previously been allowed to do.  According to the plaintiff, these actions amount to a violation of the plaintiff's constitutional rights, and he prays for monetary damages and for an Order

allowing "all Jewish inmates to congregate in an exclusive room for practicing Judaism as we were, without being segregated from the rest of the prison population."

Initially, the defendants' motion seeks dismissal of the plaintiff's claim for monetary damages asserted against them in their official capacities. Although the defendants correctly point out that the plaintiff's Complaint is unclear as to whether he has named the defendants in their individual and/or their official capacities, this Court, in light of the liberality accorded to the pleadings of pro se petitioners, <u>Haines v. Kerner</u>, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), interprets the plaintiff's allegations as asserting a claim against the defendants in both capacities. Notwithstanding, § 1983 does not provide a federal forum for a litigant who seeks recovery of monetary damages against either a State or its officials acting in their official capacities, which officials are not seen to be "persons" within the meaning of § 1983. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Thus, it is clear that the plaintiff fails to state a claim for monetary damages under § 1983 against the defendants in their official capacities, and the defendants' motion should be granted in this respect.[3]

---

[3] In contrast, a suit against a state official in his individual or personal capacity, seeking to impose <u>individual</u> liability upon a government official for actions taken by the official under color of state law, is not treated as a suit against the state. <u>Hafer v. Melo</u>, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus, a showing by the plaintiff that a defendant state official, acting individually and under color of state law, has caused the deprivation of the plaintiff's federal rights, is enough to establish personal liability in a § 1983 lawsuit. <u>Id.</u> Further, a state official in his or her official capacity, when sued for <u>declaratory</u> or <u>injunctive</u> relief, is not a prohibited defendant because official capacity actions for prospective relief are not treated as actions against the state. <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). <u>See also</u> 15 Am.Jur.2d Civil Rights § 101.

Turning to the plaintiff's claims asserted against the defendants in their individual capacities for monetary damages (and against the defendants in their official capacities for declaratory and injunctive relief), the defendants first contend that the plaintiff has failed to allege sufficient personal participation by most of the defendants named in the Complaint in any violation of the plaintiff's constitutional rights.  In this regard, pursuant to well-settled legal principles, in order for a prison official to be found liable under § 1983, the official must have been personally involved in conduct causing an alleged deprivation of constitutional rights, or there must be a causal connection between the actions of the official and the constitutional violation sought to be redressed.  <u>Lozano v. Smith</u>, 718 F.2d 756 (5th Cir. 1983).  Any allegation that the defendants are responsible for the actions of their subordinates or co-employees is alone insufficient to state a claim under § 1983.  <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

Applying this standard in connection with the plaintiff's claims asserted against defendants Leslie Dupont, Richard Peabody, Ronnie Jett, Bruce Dodd, Tim Delaney, Troy Poret, Joseph Lamartinere, Cathy Fontenot, Robert Toney, Brad DeLaughter, Landry Valant and Randy Barrios, the Court concludes that the defendants' motion is well-founded. Other than in the Caption of the Complaint, as amended, and in a section of the Complaint entitled "Parties", the plaintiff makes no mention of any of these defendants and makes no factual assertions whatever that these defendants had any direct or personal involvement in the decision to transfer him to Camp D, in the issuance of the disciplinary report of May 19, 2010, or in the alleged denial of his right to congregate and practice his religion with other members of his faith at the main prison complex. Although the plaintiff alleges, in his opposition to the defendants'

motion, that these twelve defendants were present at the meeting held on May 28, 2010, where defendant Cain "offered to segregate all Jewish inmates at Camp D if they wanted to attend religious services", this is an insufficient basis upon which to rest liability under § 1983. While the plaintiff is correct that a bystander may in some instances be held accountable for a failure to intervene to prevent a constitutional violation, the Court concludes that mere attendance at a meeting where Jewish inmates were offered an opportunity by the head warden (but were not compelled) to transfer to a different location within the prison to practice their religion, does not subject these officers to liability for the actions of the head warden. Accordingly, these twelve defendants are entitled to dismissal from this proceeding.

Turning to the plaintiff's claims asserted against the four remaining defendants, Warden Burl Cain, Ass't Warden Kevin Benjamin, Col. Chad Darbonne and Ass't Warden Darrel Vannoy, the plaintiff first complains that defendant Benjamin transferred him to Camp D at LSP in April, 2010. The law is clear, however, that the classification of prisoners is a matter left to the sound discretion of prison officials, Wilkerson v. Maggio, 703 F.2d 909 (5th Cir. 1983), and prison officials are granted broad administrative and discretionary authority over the institutions they manage and the lawfully incarcerated persons under their control. Hewitt v. Helms, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). So long as the conditions and degree of confinement are within the sentence imposed on an inmate and do not otherwise violate the Constitution, the due process clause does not in itself subject a prison official's treatment of an inmate to judicial oversight. Id. See also Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Although the plaintiff was clearly unhappy with his transfer in April, 2010, he had neither a protected liberty interest in his housing

assignment nor a legitimate expectation that he would remain at that location. Accordingly, it is clear that, without more, the plaintiff fails to state a claim of constitutional dimension relative to this transfer.

Notwithstanding the foregoing, the plaintiff also asserts that the transfer was made specifically for the purpose of hindering the practice of his religious beliefs with other Jewish inmates. This contention, however, is wholly conclusory, and the plaintiff provides no facts from which any intent to interfere with his religious beliefs, or with his exercise thereof, may be inferred. His mere belief that defendant Benjamin ordered the transfer for this purpose is not sufficient to support a claim in the absence of articulable facts suggesting such motivation. Cf., Pedraza v. Meyer, 919 F.2d 317 (5th Cir. 1990) (holding that vague and conclusory allegations are insufficient to state an equal protection claim). Accordingly, the plaintiff's allegations regarding his transfer to Camp D by defendant Benjamin in April, 2010, are insufficient to state a claim of constitutional dimension relative to this defendant, and this claim must be dismissed.

The plaintiff next complains that, on May 19, 2010, defendant Benjamin further discriminated against the plaintiff by instructing defendant Darbonne to issue the plaintiff a wrongful disciplinary report, allegedly accusing the plaintiff of improperly attending a religious callout.[4] This claim as well must fail. Initially, the law is clear that the mere issuance of a false disciplinary report does not amount to a

---

[4] In fact, it appears from a copy of the referenced disciplinary report, filed as an exhibit by the plaintiff, that he was charged with "theft by fraud" for complaining to prison officials that he was not being allowed to practice his religion whereas prison officials concluded that "he has been afforded ample time to pursue his religious activities".

denial of an inmate's constitutional rights where the punishment imposed does not result in an atypical deprivation in the context of ordinary prison life. Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Notwithstanding, the issuance of a false disciplinary report in retaliation for an inmate's exercise of his constitutional rights may violate an inmate's constitutional rights. See Woods v. Smith, 60 F.3d 1161 (5th Cir. 1995) ("an action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reasons, might have been legitimate"). In order to state a valid claim for retaliation under § 1983, a prisoner must allege "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his ... exercise of that right, (3) a retaliatory adverse act, and (4) causation." Jones v. Greninger, 188 F.3d 322 (5th Cir. 1999). An inmate must allege more than his personal belief that he is the victim of retaliation, Johnson v. Rodriquez, 110 F.3d 299 (5th Cir. 1997), and "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'" Woods v. Smith, supra. The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. Morris v. Powell, 449 F.3d 682 (5th Cir. 682).

Notwithstanding the foregoing, some acts, even though they may be motivated by retaliatory intent, are so de minimis that they would not deter an ordinary person from the further exercise of his rights. Morris v. Powell, supra. Such acts do not rise to the level of a constitutional violation and cannot form the basis of a § 1983 claim. Id. Here, the plaintiff alleges that he was issued a false and retaliatory disciplinary

report in response to his exercise of his First Amendment right to practice his religion.  Notwithstanding, it appears from the record of the plaintiff's disciplinary proceedings, produced by him in opposition to the defendants' motion, that his disciplinary sentence of a transfer to the maximum security working cellblocks was ultimately reversed on appeal because there was insufficient evidence to support the finding of guilt.  Accordingly, the disciplinary charge was expunged from the plaintiff's record, and he was ordered returned "for custody and housing placement similar to that he held at the time of the incident".  Accordingly, the plaintiff suffered no adverse consequence in fact as a result of the referenced disciplinary report.  The disciplinary report and sentence, therefore, must be considered to be a <u>de minimis</u> action which is not sufficient to support his claim asserted against defendants Benjamin and Darbonne.  For this reason, the plaintiff's claim relative to the alleged wrongful disciplinary report is subject to dismissal as being without merit in a constitutional sense.

Finally, the plaintiff alleges that he attended a meeting on May 28, 2010, where defendant Cain "offered to segregate all Jewish inmates at Camp D if they wanted to attend religious services."  Thereafter, beginning in June, 2010, the plaintiff was advised that he would no longer be allowed to attend religious services in Room 216 of the main prison complex, which had theretofore been set aside for the exclusive use of the Jewish community at LSP.  In addition, religious materials which had theretofore been stored in Room 216 were bundled up and sent to Camp D where, although they are admittedly available to the plaintiff, are "being denied to the rest of the Jewish community".  The plaintiff believes that this is a further attempt by prison officials to "segregate" the members of the Jewish community at LSP and to otherwise

deny them an opportunity to congregate together and practice their faith. According to the plaintiff, this is a discriminatory practice because prison officials allow inmates of other religious faiths to routinely travel to and congregate at the main prison complex. In addition, the plaintiff complains that defendant Vannoy has declared that Jewish inmates will be forced to work on their religious holidays and will not be afforded an opportunity to congregate on certain days deemed holy by the Jewish faith.

In the Court's view, the plaintiff's allegations relative to the foregoing, although admittedly sparse, are sufficient at this stage of the proceedings to state a claim of constitutional dimension, but only as to certain of these claims. Initially, with regard to the plaintiff's assertion that Jewish inmates are no longer allowed to utilize a specific area at the main prison complex, Room 216, for their exclusive use, the law is clear that "[a] special chapel or place of worship need not be provided for every faith regardless of size". Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). Accordingly, it is permissible for prison officials to consider the demand and need of any group requesting access to a place of worship, including space and staffing limitations, when deciding where religious groups will conduct their services. Id. (noting that the Constitution does not demand that every religious group, regardless of size, have identical facilities or access). The mere fact that prison officials may have previously allowed Jewish inmates the exclusive use of Room 216 at the main prison complex does not mean that they are constitutionally required to continue to do so. Accordingly, in light of the admittedly small number of practicing Jewish inmates at LSP, the Court finds that the plaintiff has failed to state a claim regarding his entitlement to an exclusive room or area

where he can practice his faith.

Further, the plaintiff has failed to state a claim of constitutional dimension regarding access to the religious items, videotapes and literature which were previously stored in Room 216. The plaintiff has conceded, in his opposition to the defendants' motion, that these materials have been sent to Camp D and that he has access to same. Accordingly, the plaintiff has not personally suffered any detriment with regard to these materials. Although he complains that other Jewish inmates are deprived of access to these materials, the plaintiff has no standing to complain of the violation of the constitutional rights of other inmates. <u>Coon v. Ledbetter</u>, 780 F.2d 1158, 1160 (5th Cir. 1986). Accordingly, this claim as well must fail.

Notwithstanding the foregoing, the plaintiff has also alleged that, after the meeting with Warden Cain on May 28, 2010, he has been denied the right to attend religious services and meetings held at the main prison complex and has been denied an opportunity to congregate with members of his faith, notwithstanding that members of other faiths are routinely allowed to attend such meetings and services. In addition, the plaintiff has been told by defendant Vannoy that Jewish inmates will be forced to work on Jewish holy days and will not be afforded an opportunity to worship together on those days. It appears that these claims arguably assert a violation of the plaintiff's right to the free exercise of his religion and a violation of his right to equal protection.

While inmates retain their First Amendment constitutional right to practice their religion, this right is subject to reasonable restrictions and limitations necessitated by penological goals. <u>O'Lone v. Shabazz</u>, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). In this regard, the

Fifth Circuit has stated that, in reviewing prison policies that impinge upon an inmate's constitutional right to the free exercise of his religious beliefs, courts should apply the deferential standard set forth in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Baranowski v. Hart, 486 F.3d 112 (5th Cir. 2007). Under Turner, a prison regulation that impinges upon an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests. Id. In making this determination, the Court is directed to consider four factors: (1) whether a valid and rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact of the accommodation on prison guards, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation in question. Id. In addition, in the equal protection context, the Fourteenth Amendment essentially directs that "all persons similarly situated should be treated alike." See Rolf v. City of San Antonio, 77 F.3d 823 (5th Cir. 1996). In order to successfully plead an equal protection claim, a civil rights plaintiff must allege that prison officials have acted with a discriminatory purpose, and a discriminatory purpose in this context "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Taylor v. Johnson, 257 F.3d 470 (5th Cir. 2001). Consideration of the four factors set forth in Turner, supra, is equally applicable in the equal protections context. Freeman v. Texas Dept. of Criminal Justice, 369 F.3d 854 (5th Cir. 2004).

    In the instant case, the defendants have made no effort to address

the four factors set forth in Turner, and the Court believes that it is appropriate that they do so.[5] In Baranowski v. Hart, supra, the inmate plaintiff complained, inter alia, that prison officials were refusing him the right to congregate with other Jewish inmates for weekly Sabbath and other holy day services and were denying Jewish inmates an opportunity to use the chapel for their religious services, notwithstanding that other religious faiths were granted such access.  In ultimately rejecting these claims, the Court engaged in a detailed fact-based examination of the Turner factors on motion for summary judgment.  See also Adkins v. Kaspar, 393 F.3d 559 (5th cir. 2004)(same, after an evidentiary hearing); Freeman v. Texas Dept. of Criminal Justice, supra (same, on motion for summary judgment).  The Baranowski Court also noted that prison officials at the institution in question recognized twenty-one Jewish holy days (compared with two for Christians) and allowed time off from work for eight of those holidays.  While it is likely, judging from documentation filed into the record, which is not reviewable in connection with the defendants' motion to dismiss, that the defendants will similarly establish the reasonableness of the actions taken in this case, this determination may only be made upon consideration of appropriate evidentiary materials and affidavits which address the pertinent issues. Accordingly, the defendants' motion should be denied in connection with the plaintiff's claims that he has been denied the right to congregate with members of his faith and to attend services and gatherings of the Jewish community at the main prison complex (as do members of other

---

[5] Contrary to the defendants' assertions, the issue in this case is not simply one of where the plaintiff is allowed to practice his religion, but of the denial of his right to congregate and worship with other members of his faith as other faiths are allegedly allowed to do at LSP and the failure to afford him an opportunity to honor his religious holy days and to congregate and worship together on those days.

religious faiths), and that prison officials refuse to recognize Jewish holy days or afford inmates an opportunity to congregate, worship or attend services on such days.

Finally, although not asserted by the defendants in their motion, the Court notes that the plaintiff will be unable to recover compensatory damages in this case. In this regard, the law is clear that an inmate may not recover damages for mental or emotional injury without a showing of a physical injury. 42 U.S.C. § 1997e(e). Accordingly, in the absence of any assertion that the plaintiff has suffered any physical injury as a result of the defendants' alleged wrongful conduct, he has no claim for compensatory damages resulting from such conduct. The plaintiff is not, however, precluded from the recovery of nominal damages (not to exceed $1.00) or punitive damages in the event that he establishes a violation of his constitutional rights. Hutchins v. McDaniels, 512 F.3d 193 (5th Cir. 2007). As to whether the plaintiff will be able to show the requisite "evil intent" or "reckless or callous indifference" which is necessary for the recovery of punitive damages, see Williams v. Kaufman County, 352 F.3d 994 (5th Cir. 2003), the Court finds that this issue is better addressed in a subsequent motion for summary judgment.

## RECOMMENDATION

It is recommended that the plaintiff's claims asserted against Msgt. Turner be dismissed for failure of the plaintiff to serve this defendant within 120 days as mandated by Rule 4(m) of the Federal Rules of Civil Procedure. It is further recommended that the defendants' Motion to Dismiss, rec.doc.no. 13, be granted in part, dismissing the plaintiff's claims asserted against defendants Leslie Dupont, Richard Peabody, Ronnie Jett, Bruce Dodd, Tim Delaney, Troy Poret, Joseph Lamartinere, Cathy Fontenot, Robert Toney, Brad DeLaughter, Landry Valant, Randy Barrios,

Kevin Benjamin and Chad Darbonne, with prejudice, dismissing the plaintiff's claims asserted against the remaining defendants, Burl Cain and Darrel Vannoy, for monetary damages in the defendants' official capacities, and that this action be referred back for further proceedings in connection with the plaintiff's claims that his First Amendment right to freely practice his religion and his Fourteenth Amendment right to equal protection have been violated by the defendants' refusal to allow him to congregate with members of his faith and refusal to allow him to attend services and gatherings of the Jewish community at the main prison complex (as do members of other religious faiths at LSP), and that prison officials refuse to recognize Jewish holy days or afford inmates an opportunity to congregate, worship or attend services on such days.

Signed in chambers in Baton Rouge, Louisiana, May 9, 2011.

**MAGISTRATE JUDGE CHRISTINE NOLAND**