UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**TED DURBIN (#132464)**                                   CIVIL ACTION

**VERSUS**

**BURL CAIN, WARDEN, ET AL.**                              NO. 10-0655-JJB-CN

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, February 16, 2012.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**TED DURBIN (#132464)**                                              CIVIL ACTION

**VERSUS**

**BURL CAIN, WARDEN, ET AL.**                                        NO. 10-0655-JJB-CN

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the cross-motions for summary judgment of the plaintiff and the remaining defendants in this case, rec.doc.nos. 41, 46 and 48.

The pro se plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Warden Burl Cain, Deputy Warden Darrel Vannoy, Ass't Warden Leslie Dupont, Deputy Warden Richard Peabody, Deputy Warden Ronnie Jett, Ass't Warden Bruce Dodd, Ass't Warden Tim Delaney, Ass't Warden Kevin Benjamin, Ass't Warden Troy Poret, Ass't Warden Joseph Lamartiniere, Col. Chad Darbonne, Ass't Warden Cathy Fontenot, Chaplain Robert Toney, Chaplain Brad DeLaughter, Msgt. Landry Valant, Msgt. Randy Barrios and Msgt. Turner, complaining that his constitutional rights have been violated through interference with his right to freely exercise his religious beliefs. Specifically, he complains that the defendants involuntarily transferred him from the main prison complex to an outcamp at LSP in April, 2010, where he is now not allowed the same opportunities to practice his religion or to associate with other members of his religious faith. Pursuant to earlier Report and Recommendation in this case, approved by the District Judge on June 3, 2011, see rec.doc.nos. 32 and 34, the plaintiff's claims asserted against all defendants have been dismissed, with the exception of his claim for monetary damages and injunctive relief against defendants Burl Cain and Darrel Vannoy,

asserting that these defendants have violated his First Amendment right to freely practice his religion, his Fourteenth Amendment right to equal protection, and his statutory rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, et seq., by refusing to allow him to congregate with members of his faith, by refusing to allow him to attend services and gatherings of the Jewish community at the main prison complex (as do members of other religious faiths at LSP), and by refusing to recognize Jewish holy days or afford him an opportunity to congregate, worship or attend services on such days.[1]

The plaintiff moves for summary judgment, relying upon the pleadings and his own sworn Declaration.

The defendants move for summary judgment, relying upon the pleadings, a Statement of Undisputed Facts, a certified copy of Department Regulation No. B-08-005 (relative to "Faith-Based Programs and Services"), a certified copy of the plaintiff's administrative remedy proceedings, a certified copy of the plaintiff's Master Prison Record and Location Sheet, a certified copy of religious Call-outs for the Jewish Community at LSP between May and September, 2010, a certified copy of a memorandum dated May 22, 2009 (relative to Room 216 of the LSP Education Building, reserved for "the exclusive use of the Jewish Community" at the prison), the affidavits of Chaplain Brad DeLaughter and Ass't Warden

---

[1] In a Supplemental Motion for Summary Judgment, rec.doc.no. 48, the plaintiff complains that the defendants have recently transferred him to Wade Correctional Center in retaliation for his exercise of First Amendment rights. However, inasmuch as the plaintiff has not sought leave of Court to amend his Complaint to add this new claim and inasmuch as an amendment of the Complaint is not appropriate in any event in light of the length of time that this matter has been pending, the Court does not interpret the plaintiff's Supplemental Motion as an amendment to the Complaint.

Orville Lamartiniere, and the unsigned "affidavits" of defendants Burl Cain and Darrell Vannoy.

Summary judgment is appropriate where there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party carries its burden of proof under Rule 56, the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. <u>Anderson</u>, <u>supra</u>. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. <u>Little v. Liquid Air Corp.</u>, 37 F.3d 1069 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. <u>Celotex</u>, <u>supra</u>. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. <u>Little</u>, <u>supra</u>, 37 F.3d at 1076. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. <u>International Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257 (5th Cir. 1994), <u>cert. denied</u>, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

As pertinent to the remaining issues in this case, the plaintiff

alleges that he is the leader of the Jewish faith community at LSP and that on April 16, 2010, without warning or reason given, he was transferred from the main prison complex to an outcamp at LSP. Thereafter, on May 28, 2010, the plaintiff attended a meeting with defendant Burl Cain and other unit wardens at LSP, where defendant Cain stated to all Jewish inmates at LSP (and also simultaneously to members of the Rastafarian and Morman faiths) that the self-professed leaders of these respective faith communities were being transferred to outcamps at LSP, and that if other inmates wished to continue to practice their respective faiths, the Warden would consent to their transfer to the respective outcamps. Thereafter, beginning in June, 2010, prison officials allegedly began to refuse to allow the plaintiff and other Jewish inmates from the LSP outcamps to attend religious gatherings in Room 216 of the main prison complex, which room had previously been set aside for the exclusive use of Jewish inmates at LSP. As a result, whereas Jewish inmates from all over LSP had previously been allowed to meet and congregate in Room 216, they were no longer allowed to do so. The plaintiff asserts that this is a discriminatory practice inasmuch as members of other religious faiths at LSP are routinely allowed to congregate together at the main prison complex. The plaintiff also complains that in September, 2010, all of the religious items which had been obtained for the Jewish community at LSP and which had previously been made available in Room 216 were bundled up and sent to the plaintiff's outcamp, thereby forcing other Jewish inmates to choose between staying at their current locations or moving to the outcamp to practice their faith. Finally, the plaintiff complains that on September 10, 2010, he spoke with defendant Vannoy about celebrating the Jewish holiday of Rosh Hashana, but defendant Vannoy responded that inmates

would be forced to work on that Jewish holy day and that they "would not be allowed to congregate" for Jewish High Holy Days as they had previously been allowed to do. According to the plaintiff, these actions amount to a violation of the plaintiff's constitutional and statutory rights, and he prays for monetary damages and for an Order allowing "all Jewish inmates to congregate in an exclusive room for practicing Judaism as we were, without being segregated from the rest of the prison population."

In response to the plaintiff's allegations, the defendants assert that the plaintiff has failed to exhaust administrative remedies, as mandated by 42 U.S.C. § 1997e, relative to his claims. Pursuant to this statute, the plaintiff was required to exhaust administrative remedies available to him at the prison prior to commencement of a lawsuit in federal court relative to prison conditions. This provision is mandatory and applies broadly to "all suits about prison life". Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.ed.2d 12 (2002). Further, a prisoner must exhaust his administrative remedies by complying with applicable prison grievance procedures before filing a suit related to prison conditions. Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004). Not only must the prisoner exhaust all available remedies, but such exhaustion must be proper, including compliance with an agency's deadlines and other critical procedural rules. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). One of the primary purposes for the administrative exhaustion requirement is to provide fair notice to prison officials of an inmate's specific complaints so as to provide "'time and opportunity to address complaints internally.'" Johnson v. Johnson, supra.

From a review of the plaintiff's administrative record, it appears

that the defendants' motion is well-taken, but only in part. As pertinent to the issues remaining before the Court, the plaintiff alleged in his original grievance, dated April 28, 2010, that he was transferred from the main prison complex to an outcamp at LSP on April 16, 2010, and that he "was not given any reason for this transfer." He further complained that, as the only recognized inmate minister of the Jewish faith at LSP, other inmates relied upon him for instruction and guidance, and he was unable to provide these services from the outcamp. He further complained that his transfer limited his ability to congregate with other members of his faith in Room 216 at the main prison complex, which was "assigned to the Jewish Community for Torah studies, language classes and services." He asserted that his transfer to the outcamp was discriminatory and retaliatory, and "hinder[ed], restrict[ed] and/or preclude[d]" the practice of his religious faith.[2]

Based on the foregoing, it appears that the only claim that the plaintiff has adequately asserted in the referenced grievance is that of his alleged wrongful transfer to an LSP outcamp and of the resulting limitation upon his ability to minister, to assist other inmates, and to congregate with members of his faith. Specifically, there is nothing in the plaintiff's grievance regarding the alleged failure of prison officials, as allegedly communicated to the plaintiff by defendant Vannoy in September, 2010, to allow the plaintiff and other Jewish inmates to observe their religious holidays. It is clear, therefore, that this

---

[2] The plaintiff also complains in the referenced grievance of access to religious materials and of the denial of hobby-shop privileges. The plaintiff has acknowledged in subsequent pleadings, however, that the referenced religious materials have since been transferred to his outcamp, and he does not assert a claim in the Complaint of a denial of hobby-shop privileges. Accordingly these claims are not before the Court.

latter claim has not been exhausted through the administrative process and is subject to dismissal for this reason. This is particularly apparent inasmuch as the plaintiff's grievance is dated April 28, 2010, and the events giving rise to this latter claim did not occur until months thereafter and, so, could not have been asserted in the initial grievance. Accordingly, the Court finds that this claim has not been administratively exhausted and must be dismissed.

Further, as a corollary to the foregoing, it appears that defendant Darrell Vannoy is also entitled to dismissal from this proceeding. Specifically, the sole allegation which the plaintiff makes relative to defendant Vannoy in the Complaint is that on September 10, 2010, this defendant informed the plaintiff that Jewish inmates would not be allowed to observe their religious holidays. As concluded above, however, this claim is subject to dismissal as not having been administratively exhausted. Accordingly, there is no legal or factual basis for the retention of defendant Vannoy as a party to this proceeding. See Lozano v. Smith, 718 F.2d 756 (5th Cir. 1983) (holding that in order for there to be liability under § 1983, there must be personal participation by a defendant in the constitutional violation alleged). Accordingly, the Court will recommend the dismissal of defendant Vannoy as well.

In contrast to the foregoing, the Court concludes that the plaintiff's administrative grievance adequately exhausts his claim relative to defendant Warden Cain and the transfer to the LSP outcamp. Specifically, although the plaintiff did not explicitly name defendant Cain in the referenced grievance, the warden's office responded to the grievance by acknowledging that defendant Cain met with the plaintiff and other Jewish inmates in May, 2010, and that defendant Cain explained at that time the decision to transfer the plaintiff to the LSP outcamp. The

reasons given for this transfer included, inter alia, "to provide access to under utilized interfaith chapels" and "to accommodate more services and meeting times for those faiths that currently have congregations that are fewer in number" because the main prison complex had "reached its capacity to provide space and meeting times." This response makes clear that defendant Cain was personally involved in the decision to transfer the plaintiff to the referenced outcamp and, further, that the plaintiff's grievance provided both adequate notice to prison officials of the plaintiff's complaint and an opportunity to respond to same. See Johnson v. Johnson, supra (holding that the degree of specificity required in identifying a person or persons responsible for claims asserted in an administrative grievance is determined by the nature of the claim and "the type of problem about which the inmate is complaining"). Accordingly, the Court finds that the plaintiff has adequately exhausted administrative remedies relative to defendant Cain.

Turning to a substantive review of the plaintiff's claim asserted against defendant Cain, the plaintiff asserts that his transfer to the LSP outcamp has violated his constitutional rights to equal protection and to the free exercise of his religious beliefs under the First and Fourteenth Amendments. As previously determined in a prior Magistrate Judge's Report, however, the plaintiff has no right to any particular classification or housing assignment and, so, cannot complain of his transfer as such, even though he is allegedly denied opportunities to participate in non-religious rehabilitation services and other programs which were available to him at the main prison complex. See McGruder v. Phelps, 608 F.2d 1023 (5th Cir. 1979) (holding that inmates have no protected liberty interest in their housing assignment or classification). Further, the plaintiff lacks standing to complain of

the alleged violation of the rights of co-inmates and, so, cannot be heard to complain that other inmates have been denied his religious advice, assistance and leadership. See Coon v. Ledbetter, 780 F.2d 1158, 1160 (5th Cir. 1986) (no standing to complain of the rights of co-inmates). Accordingly, the question before the Court is only whether, by transferring the plaintiff to the referenced outcamp, where he apparently has access to religious materials and to a chapel for services but is limited in his ability to congregate with other members of his faith, defendant Cain has impermissibly interfered with the plaintiff's constitutional and statutory rights.

Inmates retain their First Amendment constitutional right to practice their religion. O'Lone v. Shabazz, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). This right, however, is subject to reasonable restrictions and limitations necessitated by penological goals. Id. In this regard, the Fifth Circuit has stated that, in reviewing prison actions that impinge upon an inmate's constitutional right to the free exercise of his religious beliefs, courts should apply the deferential standard set forth in Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Baranowski v. Hart, 486 F.3d 112 (5th Cir.), cert. denied, 552 U.S. 1062, 128 S.Ct. 707, 169 L.Ed.2d 553 (2007). Under Turner, prison action that impinges upon an inmate's constitutional rights is valid only if it is reasonably related to legitimate penological interests. Id. In making this determination, the Court considers four factors: (1) whether a valid and rational connection exists between the prison action and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact of the accommodation on prison guards, other inmates, and the allocation

of prison resources generally; and (4) whether there are "ready alternatives" to the action in question. Id. In addition, in the equal protection context, the Fourteenth Amendment essentially directs that "all persons similarly situated should be treated alike." See Rolf v. City of San Antonio, 77 F.3d 823 (5th Cir. 1996). In order to successfully plead an equal protection claim, a civil rights plaintiff must allege that prison officials have acted with a discriminatory purpose, and a discriminatory purpose in this context "implies that the decision maker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group." Taylor v. Johnson, 257 F.3d 470 (5th Cir. 2001). Consideration of the four factors set forth in Turner, supra, is equally applicable in the equal protection context. Freeman v. Texas Dept. of Criminal Justice, 369 F.3d 854 (5th Cir. 2004).

In addition to the foregoing, RLUIPA provides, in part, at 42 U.S.C. § 2000cc-1(a), that "[n]o government shall impose a substantial burden on the religious exercise of a person ... confined to an institution ... unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." While the statute does not define "substantial burden," the Fifth Circuit has stated, in the context of RLUIPA, that government action "... creates a 'substantial burden' on a religious exercise if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." Adkins v. Kaspar, 393 F.3d 559 (5th Cir. 2004), cert. denied, 545 U.S. 1104, 125 S.Ct. 2549, 162 L.Ed.2d 275 (2005). Whether the government action or regulation imposes a substantial burden on an adherent's

exercise requires a case-by-case, fact-specific inquiry. Id.  Based upon the evidence before the Court, the Court finds that there are disputed issues of material fact which preclude summary judgment as to the plaintiff's claim.  Specifically, the defendants give only limited attention to the four factors set forth in Turner and, in fact, do little more than re-state, in conclusory fashion, the first of the four factors. Further, the defendants provide limited factual information relative to the effect of the transfer on the plaintiff's ability to congregate and practice his faith, to the accommodations which are provided to other faith-based groups at LSP based on their relative size or number of adherents, to the accommodations which are provided to members of the Jewish faith residing at the main prison complex after the plaintiff's transfer, or to other pertinent factors, and the Court believes that it is appropriate that this be done.[3]  For example, in Baranowski v. Hart, supra, the inmate plaintiff complained, inter alia, that prison officials were refusing him the right to congregate with other Jewish inmates for weekly Sabbath and other holy day services and were denying Jewish inmates an opportunity to use the chapel for their religious services, notwithstanding that other religious faiths were granted such access. In ultimately rejecting these claims, the Court engaged in a detailed fact-based examination of the Turner factors on motion for summary judgment.  See also Adkins v. Kaspar, supra (same, after an evidentiary hearing); Freeman v. Texas Dept. of Criminal Justice, supra (same, on motion for summary judgment).  In the instant case, however, the

---

[3] Contrary to the defendants' assertions, the issue in this case is not simply one of where the plaintiff is allowed to practice his religion, but of the denial, as a result of the transfer, of his right to congregate and worship with other members of his faith as other faiths are allegedly allowed to do at LSP.

defendants have not produced evidence sufficient to allow for such fact-based examination. For one thing, the "affidavits" of defendants Cain and Vannoy, attached to the defendant's motion for summary judgment, are neither signed nor notarized by the defendants and so are not properly before the Court. And as for the other documentary evidence offered by the defendants, this documentation consists principally of (1) Department Regulation No. B-08-005, which provides only the broad general policy of the Department "that all offenders be given the opportunity to practice their faith," (2) documents reflecting that in May and June, 2011 (more than a year after the plaintiff's transfer), a period of one day per week for two or three hours has been set aside for the "Jewish Community" at Camp C at LSP, and (3) documents reflecting that between May and September, 2010 (during the months immediately after the plaintiff's transfer), the plaintiff was apparently authorized to attend religious gatherings at the main prison complex. This documentation clearly does not allow for the fact-based analysis envisioned by <u>Turner</u> and <u>Adkins</u>.

Finally, even if the "affidavit" of defendant Cain were signed and notarized, it would not resolve the issues before the Court. The defendant states therein that he made the decision to transfer the plaintiff and the Jewish "religious services" to the LSP outcamp in April, 2010, so as "to provide access to the under-utilized interfaith chapel[]" at the outcamp and to allow the plaintiff to become a member of the Jewish Concept Club established at the outcamp. The affidavit further states that defendant Cain made this determination (1) because the main prison complex "had reached its capacity to provide space for requested meeting times ... for those faiths that had fewer in number", (2) because the outcamps had under-utilized facilities that could "accommodate more services and meeting times," (3) because some inmates

were not allowed to attend Jewish services at the main prison complex because of their classification level, (4) because there were not enough Jewish inmates at the various outcamps to support services in each such outcamp, and (5) because budgetary issues limited the ability of prison officials to transport inmates from the various outcamps to the main prison complex. Finally, the affidavit states that the plaintiff was nonetheless "allowed" to attend gatherings in the main prison complex after his transfer.

Notwithstanding the assertions contained in the purported affidavit, other documentary evidence in the record is subject to interpretation as calling into question these assertions. In the first place, even accepting the purported non-discriminatory rationale of defendant Cain, i.e., that the re-location of the plaintiff "and the religious services for the Jewish ... communit[y]" at LSP was intended to be a means of allocating limited space and resources and allowing a better use of under-utilized outcamp facilities, there is no suggestion in the record that this penological goal has been realized to any extent. To the contrary, the plaintiff asserts that none of the Jewish inmates housed at the main prison complex have elected to transfer to the plaintiff's outcamp, and further, that this is predictable because such transfer would have resulted in their inability to utilize the many rehabilitative programs and services available only at the main prison complex, some of which programs and services can affect parole consideration and, so, can potentially shorten the inmates' periods of confinement. Accordingly, after the plaintiff's transfer, it appears from Call-out sheets filed by the defendants that there may be only two or three inmates housed at the plaintiff's outcamp who are interested in actively pursuing the Jewish faith. Thus, although the plaintiff's outcamp may in fact provide him

with access to both religious materials and to a chapel to conduct services, he apparently has few congregants with whom to celebrate or study. Further, whereas the defendants have produced Call-out sheets suggesting that, prior to the plaintiff's transfer and for several months thereafter, he and other Jewish inmates were authorized to travel from the LSP outcamps to gather at the main prison complex, other Call-out sheets filed in the record, specifically for October, 2010, corroborate the plaintiff's contrary assertion that such transports may have ceased.[4] And interestingly, these latter Call-out sheets suggest that Jewish inmates housed at the main prison complex may have <u>continued</u> to gather – for up to 4 or more days per week and for as many as 4½ hours per day, whereas the plaintiff, at his outcamp, is now apparently allowed access

---

[4] Call-out sheets introduced by the defendants as exhibits to their motion for summary judgment reflect that from May, 2009, until September, 2010, the plaintiff and other Jewish inmates, including those housed in LSP outcamps, were routinely allowed to congregate in Room 216 of the Education building at the main prison complex. <u>See</u> documents attached to rec.doc.nos. 46. Specifically, these documents reflect that during the nine-month period between January and September, 2010, these gatherings occurred on four or more days out of every week for sizable blocks of time, <u>i.e.</u>, every Friday and Saturday for 4½ hours (for "Jewish Community Shabbat"), every Sunday for 3 hours (for "Jewish Community Basic Dialect Understanding"), every Wednesday for 4 hours (for "Jewish Community Group Torah Study"), and also on numerous additional days, apparently when rabbis were available for services or when Jewish holy days were being celebrated or observed. Notwithstanding, the record also includes Call-out sheets for October, 2010, <u>see</u> attachments to rec.doc.no. 23, which reflect that although these four-day-a-week gatherings may have continued in Room 216 of the Education Building after the plaintiff's transfer, the plaintiff and other Jewish inmates housed in the LSP outcamps are no longer authorized to attend. The Court does not have before it any later Call-out sheets which might reflect the opportunities provided to the plaintiff after October, 2010, to congregate and practice his faith. The Court notes, however, that Monthly Chaplains' Department Schedules for the months of October, 2010, through January, 2011, <u>see</u> attachments to rec.doc.no. 20, which purport to provide a list of "religious programs and services coordinated by the Chaplains Department" for these later months, do not show any Jewish meetings or services conducted at LSP during this period.

to the interfaith chapel only on one day per week for 2 or 3 hours.[5]

Considering that one of the stated reasons given in the defendant's "affidavit" for transferring the plaintiff "and the religious services for the Jewish ... communit[y]" was apparently to centralize the Jewish faith community in one location, to facilitate the practice of that faith, and "to accommodate more services and meeting times" (emphasis added), there is a question whether, and if so why, the plaintiff now appears to have less time and opportunity to gather with Jewish inmates and to practice his faith. And considering that another stated reason for the transfer was the inability of prison officials to continue to accommodate requested meeting times and spaces at the main prison complex for smaller faith-based groups, there is a question whether Jewish inmates housed at the main prison complex continue to have available to them, after the plaintiff's transfer, generous blocks of time, four or more days per week, to congregate in Room 216 of the main prison complex, whereas the plaintiff and other Jewish inmates are not allowed to attend. And finally, whereas a third stated reason for the transfer was the alleged inability of prison personnel, due to budgetary restrictions, to continue to transport the plaintiff and other Jewish inmates from the outcamps to the main prison complex for meetings and services, the defendants have failed to provide any evidence to counteract the plaintiff's contrary factual assertion that inmates of other faiths are routinely transported to attend services at the main prison complex. While it is permissible for prison officials to consider the demand, relative size and need of any group requesting religious accommodation

---

[5] To the extent that the transfer of the plaintiff to the LSP outcamp may have failed to accomplish the goals stated by defendant Cain, the Court questions whether the transfer may be seen to be rationally related to these goals under Turner.

when deciding where religious groups will conduct services, Cruz v. Beto, 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972) (noting that the Constitution does not demand that every religious group, regardless of size, have identical facilities or access), prison officials are required to at least be neutral in the limitations that they impose upon the religious rights of inmates. See Mayfield v. Texas Dept. of Criminal Justice, 529 F.3d 599 (5th Cir. 2008). In the absence of any evidence reflecting that prison officials have considered these and other issues, the Court concludes that there are unresolved questions in this case which preclude the grant of summary judgment as to the plaintiff's remaining claim asserted against defendant Cain.

## RECOMMENDATION

It is recommended that the plaintiff's Motions for Summary Judgment, rec.doc.no. 41 and 48, be denied, and that the Motion for Summary Judgment of defendants Burl Cain and Darrell Vannoy, rec.doc.no. 46, be granted in part, such that the plaintiff's claim that defendant Darrel Vannoy has refused to allow the plaintiff to celebrate Jewish religious holidays be dismissed, and that this matter be referred back for further proceedings in connection with the plaintiff's claim asserted against defendant Burl Cain that the defendant has violated the plaintiff's First Amendment right to freely practice his religion, his Fourteenth Amendment right to equal protection, and his statutory rights under RLUIPA by transferring him to an LSP outcamp where he is limited in his ability to practice his faith and congregate with members of his faith.

Signed in chambers in Baton Rouge, Louisiana, February 16, 2012.

**MAGISTRATE JUDGE CHRISTINE NOLAND**